IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   15-cv-00462-WYD-NYW

JUSTIN E. SMITH,
CHAD DAY,
SHAYNE HEAP,
RONALD B. BRUCE,
CASEY SHERIDAN,
FREDERICK D. MCKEE,
SCOTT DECOSTE,
JOHN D. JENSON,
MARK L. OVERMAN,
BURTON PIANALTO,
CHARLES F. MOSER, and
PAUL B. SCHAUB,

        Plaintiffs,

v.

JOHN W. HICKENLOOPER, Governor of the State of Colorado,

        Defendant.

---

## ORDER ON MOTION TO DISMISS

---

I.    <u>INTRODUCTION</u>

This matter is before the Court on Defendant John Hickenlooper, Jr.'s

["Hickenlooper"] Motion to Dismiss Plaintiff's Complaint Under Rules 12(b)(1) and

12(b)(6) filed on May 1, 2015.  A response in opposition to the motion was filed on June

26, 2015, and a reply was filed on July 13, 2015.  Thus, the motion is fully briefed.  Also,

on January 27, 2016, the "Governor's Notice of Supplemental Authority Supporting His

Motion to Dismiss" was filed.

II.   BACKGROUND

Colorado's voters adopted Amendment 64 in 2012, adding Article XVIII, Section 16 to the Colorado Constitution.  This amendment legalized the use, possession, sale, distribution, and cultivation of marijuana by persons over the age of twenty-one. Plaintiffs, who are law enforcement officials from Colorado, Kansas, and Nebraska, argue that three provisions of Amendment 64—section 3 (governing the personal use of recreational marijuana), section 4 (governing recreational marijuana facilities), and section 5 (providing for the regulation of recreational marijuana)—are invalid because they conflict with federal law and international treaties and therefore violate the Supremacy Clause.  (*See* Compl., ECF No. 1, ¶¶ 65-73, 106.)  Plaintiffs also allege that the pertinent provisions of Amendment 64 are preempted by the Controlled Substances Act [the "CSA"], 21 U.S.C. §§ 801 *et seq.*, and American foreign policy.  Plaintiffs seek a declaration that Sections 16(3)-(5) of Amendment 64 are unconstitutional and an injunction barring their continued implementation and enforcement.

 Plaintiffs' theory is that through the CSA and various International Conventions and treaties[1], Bilateral Initiatives, and Trade Agreements [herein collectively referred to as "International Conventions"], Congress intended to prevent the states from adopting marijuana-related laws that do not adhere to a policy of marijuana prohibition.  Arguing that Congress has "preeminent federal authority and responsibility over controlled substances," Plaintiffs allege that permitting states to regulate marijuana, rather than

---

[1] Plaintiffs argue that Amendment 64 contravenes the Single Convention on Narcotic Drugs of 1961, the Convention on Psychotropic Substances of 1971, and the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances of 1988. (Compl., ¶ 41.)

Case 1:15-cv-00462-WYD-NYW   Document 51   Filed 02/26/16   USDC Colorado   Page 3 of 12

independently criminalizing it, will create a "patchwork" that "interferes with the federal

drug laws." (Compl., ¶¶ 3, 4.) Plaintiffs fall into three groups:

> • Sheriffs from Colorado (Defendants Smith, Day, Heap, Bruce, Sheridan, and McKee) who appear only in their individual capacities;
>
> • Sheriffs from counties in other states (Nebraska and Kansas) (Defendants Hayward, Jensen, Overman, and Pianalto), who appear in their individual and official capacities; and
>
> • County Attorneys Moser and Schaub, both of whom sue the Governor in their individual and official capacities.

(*Id.*, ¶¶ 8–19.)

Defendant Hickenlooper asserts that this case should be dismissed for three

reasons. First, he argues that the Plaintiffs lack standing. Second, he asserts that

Plaintiffs fail to state a cause of action because the CSA, the Supremacy Clause, and

the International Conventions neither include nor create a right of private enforcement.

Finally, Hickenlooper argues that Plaintiffs' claims fail as a matter of law on the merits,

as Amendment 64 is not preempted by the CSA or U.S. Foreign Policy conventions or

agreements. I find for the reasons set forth below that Hickenlooper's motion to dismiss

should be granted and this case dismissed.

III.    ANALYSIS

A.    Standard of Review

Hickenlooper seeks to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(1) and

(6). Under Rule 12(b)(1), a complaint may be dismissed for lack of subject matter

jurisdiction. A facial attack on the complaint's allegations as to subject matter

jurisdiction, as in this case, "questions the sufficiency of the complaint." *Holt v. United*

*States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  In reviewing a facial attack, the Court "must accept the allegations in the complaint as true." *Id.*

As to a motion to dismiss filed under that Rule 12(b)(6), the court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Bd. of County Comm'rs of Cnty. of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011).  Plaintiff "must allege that 'enough factual matter, taken as true, [makes] his claim for relief ... plausible on its face.'" *Id.* (quotation and internal quotation marks omitted).  "A claim has facial plausibility when the [pleaded] factual content [ ] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quotation omitted).

B.     <u>The Merits of the Motion</u>

I first address Hickenlooper's argument that Plaintiffs have no cause of action under the CSA, the International Conventions, or the Supremacy Clause, and find it is dispositive.  I note that "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 278, 286 (2001).  "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.*  This is determined by statutory intent. *Id.*  Without such intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87.

The Supreme Court has held that "'[t]he question whether Congress ... intended to create a private right of action [is] definitively answered in the negative' where a

'statute by its terms grants no private rights to any identifiable class.'" *Gonzaga Univ. v. John Doe*, 536 U.S. 273, 283-84 (2002) (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979)). "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefited.'" *Id.* at 284 (quotation omitted). "[E]ven where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action must still show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'" *Id.* (emphasis in original) (quotation omitted). "Absent Congressional intent to create both a right and a remedy in favor of a plaintiff, a cause of action does not exist." *Cuba Soil and Water Conservation Dist. v. Lewis*, 527 F.3d 1061, 1064 (10th Cir. 2008).

Turning to the CSA, I agree with Hickenlooper that federal courts have uniformly held that the CSA does not create a private right of action. This was noted by Judge Blackburn in a recent decision in *Safe Streets Alliance, et al. v. Hickenlooper, et al.*, Civil Action No. 15-cv-349-REB-CBS (D. Colo. January 19, 2016) (ECF No. 118 at 8-9) [hereinafter "the January 19, 2016 Order"] (citing cases); *see also Shmatko v. Ariz. CVS Stores LLC*, No. 14-CV-01076, 2014 WL 3809092, at *2 (D. Ariz. Aug. 1, 2014) (dismissing case for lack of subject matter jurisdiction because "[f]ederal law unequivocally holds. . . that the . . . CSA do[es] not create private rights of action that can give rise to a federal question.")

As Judge Blackburn stated in support of his ruling in the *Safe Streets* case, "[t]here is a strong presumption that criminal statutes, enacted for the protection of the general public, do not create private rights of action." (January 19, 2016 Order at 8.)

Moreover, as in the *Safe Streets* case, Plaintiffs here "point to nothing in the text of the CSA that includes the type of "rights-creating language" which "explicitly confer[s] a right directly on a class of persons that includes the plaintiff" or "identif[ies] the class for whose especial benefit the statute was enacted." (*Id.* at 8) (quoting *Love v. Delta Air Lines*, 310 F.3d 1347, 1352 (11th Cir. 2002)).  Instead, according to its plain terms, "[t]he [CSA] is a statute enforceable only by the Attorney General and, by delegation, the Department of Justice."  *Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 293 (3d Cir. 2010) (citing 21 U.S.C. § 871(a)).  I adopt the well reasoned analysis of Judge Blackburn in the *Safe Streets Alliance* case and find that the CSA does not create a private right of action.  Moreover, Plaintiffs have not shown that the statute provides a private remedy.

I also find that Plaintiffs have not shown that a private right of action or remedy exists under the International Conventions they rely upon.  *See Medellin v. Texas*, 552 U.S. 491, 506 n.3 (2008) ("[T]he background presumption is that '[i]nternational agreements, even those directly benefitting private persons, generally do not . . . provide for a private cause of action in domestic courts.'" (citation omitted)). Additionally, these conventions, treaties, and agreements impose no duties on Colorado and confer no rights on Plaintiffs.  Instead, the United States is the signatory, and the United States Attorney General's Office has stated that the federal government's permissive approach to state regulation of marijuana (as outlined in the Cole Memo) "does not violate the United States' treaty obligations."  *Conflicts Between State and Federal Marijuana Laws: Hearing Before S. Comm. On the Judiciary*, 113th Cong.

(Answers by James M. Cole to Questions for the Record at 4) (Sept. 10, 2013), available at http://tinyurl.com/povoazz.

Moreover, Plaintiffs may not use the Supremacy Clause to graft a private right of action for preemption onto the CSA or the International Conventions.  This was made clear by the recent decision of the Supreme Court in *Armstrong v. Exceptional Child Ctr.,* ___ U.S. ___, 135 S. Ct. 1378 (2015).  There, the Supreme Court made clear that the Supremacy Clause was "a rule of decision", "instruct[ing] courts what to do when state and federal laws clash."  *Id.* at 1383.  It is "not the 'source of any federal rights,'" and "does not create a cause of action."  *Id.*  In so holding, the Court noted that the Supremacy Clause must be read in the context of the Constitution as a whole, and that "Article I vests Congress with broad discretion over the manner of implementing its enumerated powers, giving it authority to 'make all Laws which shall be necessary and proper for carrying [them] into Execution.'"  *Id.* at 1383 (quoting Art. I, § 8.)  It then stated:

> If the Supremacy Clause includes a private right of action, then the Constitution *requires* Congress to permit the enforcement of its laws by private actors, significantly curtailing its ability to guide the implementation of federal law. It would be strange indeed to give a clause that makes federal law supreme a reading that limits Congress's power to enforce that law, by imposing mandatory private enforcement—a limitation unheard-of with regard to state legislatures.

*Id.* at 1384 (emphasis in original).

The Supreme Court in *Armstrong* rejected the argument that its "preemption jurisprudence—specifically, the fact that we have regularly considered whether to enjoin the enforcement of state laws that are alleged to violate federal law", demonstrated that

the Supremacy Clause creates a cause of action for its violation.  135 S. Ct. at 1384.  It stated that the ability to sue to enjoin unconstitutional actions by state and federal officers is a "judge-made" equitable remedy, and that it does not "rest[] upon an implied right of action contained in the Supremacy Clause."  *Id.*  Thus, to the extent Plaintiffs imply that they may bring a cause of action for preemption directly under the Supremacy Clause, this argument is without merit.

Plaintiffs argue, however, that the *Armstrong* decision permits them to proceed in equity to enjoin enforcement of Amendment 64.  While *Armstrong* did find that there might be a right to sue in equity to enjoin unconstitutional actions, as noted above, I find that there is no such right in this case.  The Supreme Court in *Armstrong* made clear that "[t]he power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations."  135 S. Ct. at 1385.  Thus, "'[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.'"  *Id.* (quotation and internal quotation marks omitted).

In *Armstrong*, the Court found that the Medicaid Act at issue in the case "implicitly preclude[d] private enforcement of § 30A, and that the respondents could not, "by invoking [the Court's] equitable powers, circumvent Congress's exclusion of private enforcement."  135 S. Ct. at 1385.  This holding was based on two aspects of the Medicaid Act which the Supreme Court found established "Congress' 'intent to foreclose' equitable relief.  *Id.* (quotation omitted).  First, "the sole remedy Congress provided for a State's failure to comply with Medicaid's requirements" was "the withholding of Medicaid funds by the Secretary of Health and Human Services.  *Id.*  The

Court held that "the 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" *Id.* (quoting *Alexander*, 532 U.S. at 290).

Second, the Court found that while "[t]he provision for the Secretary's enforcement by withholding funds might not*, by itself*, preclude the availability of equitable relief", it did so "when combined with the judicially unadministrable nature" of the statute's text. *Armstrong*, 135 S. Ct. at 1385 (emphasis in original). It stated:

> It is difficult to imagine a requirement broader and less specific than § 30(A)'s mandate that state plans provide for payments that are "consistent with efficiency, economy, and quality of care," all the while "safeguard[ing] against unnecessary utilization of ... care and services." Explicitly conferring enforcement of this judgment-laden standard upon the Secretary alone establishes, we think, that Congress "wanted to make the agency remedy that it provided exclusive," thereby achieving "the expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decisionmaking," and avoiding "the comparative risk of inconsistent interpretations and misincentives that can arise out of an occasional inappropriate application of the statute in a private action." . . .

*Id.* (quotation omitted). The Supreme Court concluded that "[t]he sheer complexity associated with enforcing § 30(A), coupled with the express provision of an administrative remedy, . . . shows that the Medicaid Act precludes private enforcement of § 30(A) in the courts." *Id.*

I find that the same result applies here, Plaintiffs' arguments notwithstanding. First, there is nothing in the CSA which expressly permits private enforcement of the Act's provisions. I also find, as in *Armstrong*, that the CSA implicitly precludes private enforcement, and that Plaintiffs may not, by invoking the court's equitable powers, "circumvent Congress's exclusion of private enforcement." 135 S. Ct. at 1385. In that

regard, I note that enforcement of the Act is expressly delegated to the Attorney

General of the United States, with criminal liability being the principal enforcement

mechanism.  *See, e.g.,* 21 U.S.C. §§ 841-51, 877; *Schneller*, 387 F. App'x at 293.[2]

Only in limited circumstances does the CSA grant other parties enforcement

powers—and these powers never apply to private litigants.  21 U.S.C. § 878(a)

(empowering the Attorney General to "designate[ ]" State and local law enforcement

officers to enforce the CSA); § 882(c) (granting States limited authority to enforce the

CSA against online pharmacies, but expressly noting that "[n]o private right of action is

created under this subsection").  Thus, like the Medicaid Act, the CSA is designed to be

implemented through a system of centralized enforcement.  The "express provision" of

these methods of enforcing the CSA "suggests that Congress intended to preclude

others.'" *Armstrong*, 135 S. Ct. at 1385 (quotation omitted).[3]

When combined with the "judicially unadministrable nature" of the CSA's text, I

find that the equitable relief Plaintiffs seek is precluded.  I agree on that issue with

Judge Blackburn's analysis of the issue in the *Safe Streets* case, wherein he noted:

> There certainly can be no more "judgment-laden standard" than that which
> confers almost complete discretion on the Attorney General to determine

---

[2] The Attorney General may also enforce the CSA through civil forfeiture proceedings (*id.*, § 881) or administrative proceedings.  (*Id.* § 875.)

[3] I note that the Department of Justice has implemented a policy of non-enforcement through the Cole Memo.  Congress, meanwhile, has endorsed this policy of non-enforcement to allow states to implement medical marijuana regulations that conflict with the CSA—even the commercial medical marijuana regime that Colorado has implemented.  Consolidated and Further Continuing Appropriations Act of 2015, Pub. L. No. 113-235, tit. V, § 538, 128 Stat. 2130 (2014) ("None of the funds made available in this Act to the Department of Justice may be used . . . to prevent . . . States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana.").  This case, if successful, would directly undermine current federal enforcement policy as articulated in the Cole memo.

whether to assert the supremacy of federal law to challenge arguably conflicting state marijuana laws. . . . The Department of Justice has made a conscious, reasoned decision to allow the states which have enacted laws permitting the cultivation and sale of medical and recreational marijuana to develop strong and effective regulatory and enforcement schemes. *See* James M. Cole, **Guidance Regarding Marijuana Enforcement**, United States Department of Justice, Office of the Deputy Attorney General (August 29, 2013). . . . Allowing private litigants to interfere with that discretionary decision would create precisely the type of "risk of inconsistent interpretations and misincentives" which strongly counsel against recognizing an implicit right to a judicially created equitable remedy. *See Armstrong*, 135 S.Ct. at 1385.

(January 19, 2016 Order at 10-11) (quotation and internal footnote omitted). I adopt his well reasoned analysis herein.[4]

I find that the same analysis applies to the International Conventions. None of them creates a private right of action, and none indicates that Congress intended private litigants to enforce them by way of the courts' equitable powers. Moreover, Plaintiffs have not shown how these Conventions would be judicially administrable. Accordingly, I find that Plaintiffs have no cause of action under the Intentional Conventions to preempt Colorado law.

Based on the foregoing, I find that both the first and second claims for relief fail to state viable claims for relief, and that Defendant Hickenlooper's motion to dismiss should

---

[4] Plaintiffs' argument that courts routinely interpret and enforce the CSA and that the CSA permits injunctions as a remedy for violations of the statute misses the mark. The issue here relates to the method of enforcement of the CSA. Courts do not make charging decisions under the CSA. Like the Medicaid Act at issue in *Armstrong*, the CSA imposes a judgment-laden standard upon the Attorney General regarding the CSA's enforcement that achieves "'expertise'" and "'uniformity'" and avoids "'the comparative risk of inconsistent interpretations and resulting administrative guidance that can arise out of an occasional interpretation of the statute in a private action.'" *Armstrong*, 135 S. Ct. at 1385 (quoting *Gonzaga Univ.*, 536 U.S. at 292). As in the *Gonzaga University* case, "[i]t is implausible to presume that the same Congress [that added the centralized review provision for enforcement in most instances by the Attorney General] intended private suits to be brought before thousands of federal – and state – court judges, which could only result in the sort of 'multiple interpretations' the Act explicitly sought to enjoin." 536 U.S. at 290.

be granted.  Since I find that Plaintiffs have no right of action, there is no need to address

Hickenlooper's remaining arguments in his motion to dismiss as to these claims.

IV.     CONCLUSION

        In conclusion, it is

        ORDERED that Defendant John Hickenlooper, Jr.'s Motion to Dismiss Plaintiff's

Complaint Under Rules 12(b)(1) and 12(b)(6) filed on May 1, 2015 (ECF No. 23) is

**GRANTED**, and Plaintiffs' claims in this case are **DISMISSED WITH PREJUDICE**.

        Dated:  February 26, 2016

                                                BY THE COURT:

                                                s/ Wiley Y. Daniel
                                                Wiley Y. Daniel
                                                Senior United States District Judge